**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

KENNETH LEE ARMSTRONG,

                Plaintiff,

vs.                                                  Case No. 3:16-cv-1557-J-34JRK

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

### I. Status

      Kenneth Lee Armstrong ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of Parkinson's Disease. Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed February 21, 2017, at 57-59, 66-67, 70-71, 206, (emphasis and capitalization omitted). On September 5, 2008, Plaintiff filed an application for DIB, and on August 25, 2008, an application for SSI, alleging an onset disability date of

---

[1]    "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." Id. A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. See Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

July 1, 1989. Tr. at 163 (DIB), 171 (SSI).[2] Plaintiff's applications were denied initially, see Tr. at 56, 60-61, 66 (DIB); Tr. at 57, 63-64, 67 (SSI), and were denied upon reconsideration, see Tr. at 58, 70, 72-73 (DIB); Tr. at 59, 71, 74-75 (SSI).

On May 21, 2010, an Administrative Law Judge ("first ALJ") held a hearing, during which he heard from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 39-55. On January 28, 2011, the first ALJ held a supplemental hearing, during which he heard from another VE. Tr. at 25-38. The first ALJ issued a decision on February 4, 2011, finding Plaintiff not disabled through the date of the decision. Tr. at 13-20. On September 22, 2011, the Appeals Council denied Plaintiff's request for review, making the first ALJ's Decision the final decision of the Commissioner. Tr. at 1-3.

On November 22, 2011, Plaintiff commenced an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) in the United States District Court for the Middle District of Florida, seeking judicial review of the Commissioner's decision. See Complaint at 1, Armstrong v. Astrue, 3:11-cv-1164-J-MCR, 2012 WL 6089640 (M.D. Fla. Dec. 12, 2012). On December 7, 2012, the Court entered an order reversing and remanding the Commissioner's final decision. See Armstrong, 2012 WL 6089640; Tr. at 460-71. Accordingly, the Appeals Council vacated the Commissioner's decision and remanded the case to a different ALJ for further proceedings. Tr. at 476.

On August 15, 2014, a different ALJ ("ALJ") held a hearing, during which she heard from Plaintiff, who was again represented by counsel, and a VE. See Tr. at 384-421. At the

---

[2]     Although actually completed on September 5, 2008, see Tr. at 163, the protective filing date of the DIB application is listed elsewhere in the administrative transcript as August 25, 2008, see Tr. at 13.

request of Plaintiff's counsel, the ALJ held a supplemental hearing on August 10, 2015, during which she heard additional testimony from Plaintiff. See Tr. at 422-34. On August 4, 2016, another supplemental hearing was held because according to the ALJ, Plaintiff's counsel requested one. See Tr. at 435-40. Plaintiff's counsel, however, represented at the hearing that she did not "believe [she] specifically requested a supplemental hearing." Tr. at 437. Thus, no additional testimony was presented at that hearing. See Tr. at 436-39.

The ALJ issued a Decision on August 26, 2016, finding Plaintiff not disabled through the date of the Decision. Tr. at 365-75. It appears the Appeals Council did not assume jurisdiction of the case, making the ALJ's Decision the final Decision of the Commissioner. See 20 C.F.R. §§ 404.984(a), 416.1484(a). On December 20, 2016, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes the following argument: the "ALJ . . . committed reversible error by ignoring the diagnostic opinions of the medical expert in this matter and substituting her own . . . medical opinion for the opinions of [the] medical expert." Plaintiff's Memorandum of Law in Opposition to the Commissioner's Decision Denying Plaintiff's Claim for a Period of Disability, Disability Insurance & Supplemental Security Income (Doc. No. 21; "Pl.'s Mem."), filed July 24, 2017, at 25 (emphasis and some capitalization omitted). Although framed as one argument, it appears Plaintiff makes two arguments in his memorandum: 1) the ALJ erred in "ignoring the diagnostic opinions of the medical expert," Dr. John Sabow, Pl.'s Mem. at 25 (emphasis and capitalization omitted); and 2) the ALJ "violat[ed] her duty to fully and fairly develop the record" by "refus[ing] to call Dr. Sabow as a medical expert, or

for that matter to call any medical expert, with regards to [P]laintiff's obscure disease," id. at 29.[3] On September 22, 2017, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 24; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.[4]

## II. The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of

---

[3]     Plaintiff also states that he "should have been found disabled based on . . . [Dr.] Sabow's opinion that the signs and symptoms of [Plaintiff's] . . . neurological disorder were the equivalent of the signs and symptoms required . . . for presumptive disability pursuant to [L]isting 12.02." Pl.'s Mem. at 25. It is unclear whether Plaintiff is arguing that he meets Listing 12.02 or whether the statement is part of his argument that the ALJ ignored Dr. Sabow's opinion. The undersigned does not analyze in detail whether Plaintiff meets Listing 12.02 because it is unclear whether Plaintiff is even making this argument and because, other than making the statement and quoting Listing 12.02, Plaintiff does not address this issue in any way. See Pl.'s Mem. at 25-31; see also Scheduling Order (Doc. No. 13) at 1 (directing parties to "identify with particularity the grounds upon which the administrative decision is being challenged," advising them that "[a]ny such challenges must be supported by citation to the record of the pertinent facts and by citations of the governing legal standards," and that "[a]ny contention for which these requirements are not met is subject to being disregarded for insufficient development"). Nonetheless, it is noted that other than Dr. Sabow's opinion that Plaintiff meets Listing 12.02 (which was rejected by the ALJ, see Tr. at 373), the record does not "contain corroborative medical evidence supported by clinical and laboratory findings," nor does Plaintiff point to any, showing that Plaintiff meets this Listing. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991); see also Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (mere diagnosis of a listed impairment is not sufficient).

[4]     Plaintiff requests oral argument. See Pl.'s Mem. at 1. The undersigned has determined that oral argument is not necessary prior to the issuance of a Report and Recommendation regarding the resolution of Plaintiff's appeal.

[5]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 367-75. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since July 1, 1989, the alleged onset date." Tr. at 367 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: hypertension and history of hand tremor." Tr. at 367 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 368 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except with no more than two hours of standing/walking. [Plaintiff] can use his right upper extremity for no more than occasional fingering and no more than frequent handling and feeling. He can occasionally climb ramps and stairs. [Plaintiff] can frequently balance and stoop. [Plaintiff] can never climb ladders, ropes and scaffolds. He must avoid concentrated exposure to hazards (machinery, heights, etc.).

Tr. at 368-69 (emphasis omitted). At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work." Tr. at 374 (emphasis and citation omitted). At step five, after considering Plaintiff's age ("22 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the

testimony of the VE and found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as "gate guard" and "ticket taker." Tr. at 374 (emphasis and citation omitted), 375. The ALJ concluded that Plaintiff "has not been under a disability . . . from July 1, 1989, through the date of th[e D]ecision." Tr. at 375 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford

v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted above, Plaintiff appears to make the following two arguments: 1) the ALJ erred in "ignoring the diagnostic opinions" of Dr. Sabow, Pl.'s Mem. at 25 (emphasis and capitalization omitted); and 2) the ALJ failed to fully and fairly develop the record because she failed to subpoena Dr. Sabow, or any other medical expert, to testify, id. at 29. As to the first argument, Plaintiff asserts that the ALJ should have given more weight to Dr. Sabow's opinion because "the opinions of a (treating physician) and specialist in the area [are] generally entitled to more weight than that of a non-treating doctor and non-specialist." Id. at 26.[6] According to Plaintiff, he "should have been found disabled based on . . . [Dr.] Sabow's opinion that the signs and symptoms of [Plaintiff's] . . . neurological disorder were the equivalent of the signs and symptoms required . . . for presumptive disability pursuant to [L]isting 12.02." Id. at 25. As to the second argument, Plaintiff states that he "requested that [the] ALJ . . . call[ ] Dr. Sabow, as a medical expert to appear telephonically at [Plaintiff's] . . . hearing" and that "[w]ithout explanation[, the] ALJ . . . denied that request and subsequently denied the requests that any medical expert appear." Id. at 29.

Responding to Plaintiff's first argument, Defendant contends that "the ALJ did not ignore Dr. Sabow's opinion, but thoroughly reviewed his opinion in determining whether Plaintiff was disabled." Def.'s Mem. at 8 (citation omitted). As to Plaintiff's second argument, Defendant asserts that "the ALJ was not required to recontact Dr. Sabow, as recontacting of a medical source is necessary only when the evidence received from the medical source

---

[6]    As explained below, Dr. Sabow is not a treating physician, but he specializes in neurology. See Tr. at 1033-34, 1023-25.

is inadequate to determine whether the claimant is disabled or not disabled." Id. at 13. According to Defendant, "the record provided sufficient evidence for the ALJ to decide Plaintiff's case." Id.

The applicable law is set out below, followed by a discussion of the relevant medical evidence. Next, the undersigned addresses Plaintiff's argument regarding the ALJ's alleged failure to consider Dr. Sabow's opinion (Plaintiff's first argument) and then discusses whether the ALJ failed to develop a full and fair record (Plaintiff's second argument).

## A.  Applicable Law[7]

The Regulations establish a "hierarchy" among medical opinions[8] that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence

---

[7]    On January 18, 2017, the SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017). Because Plaintiff filed his claims before that date, the undersigned cites the rules and Regulations that were in effect on the date of the ALJ's Decision, unless otherwise noted.

[8]    "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

in the record; and (5) "[s]pecialization." 20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician,[9] the Regulations instruct ALJs how to properly weigh such a medical opinion. See 20 C.F.R. § 404.1527(c). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. Id. When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Hargress v. Soc. Sec. Admin., Comm'r, 874 F.3d 1284, 1287 (11th Cir. 2017); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Hargress, 874 F.3d at 1287; Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d

---

[9]     A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of non-examining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a non-examining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of "any physician" whose opinion is inconsistent with the evidence. Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B. 1981) (citation omitted).

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham, 660 F.2d at 1084 (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Hargress, 874 F.3d at 1287; Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

"It is well-established that an ALJ has a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)). "Nevertheless, the claimant bears the burden of proving that he [or she] is disabled, and,

-10-

consequently, he [or she] is responsible for producing evidence in support of his [or her] claim." Id. The Regulations provide several measures the ALJ may take if he or she determines the record evidence is insufficient to assess a claimant's case: 1) recontact the medical source, 2) request additional existing evidence, 3) request the claimant to undergo a consultative examination at the SSA's expense, and 4) request more information from the claimant or others. 20 C.F.R. §§ 404.1520b(b)(2)(i)-(iv), 416.920b(b)(2)(i)-(iv). Further, "[w]hen it is reasonably necessary for the full presentation of a case, an [ALJ] . . . may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses." 20 C.F.R. §§ 404.950(d)(1), 416.1450(d)(1).

To remand a case for the ALJ's failure to fully develop the record, there must be a showing that the claimant's right to due process has been violated because of such failure. Brown v. Shalala, 44 F.3d 931, 934-35 (11th Cir. 1995) (citing Kelley v. Heckler, 761 F.2d 1538, 1540 (11th Cir. 1985)). Prejudice exists if the record contains evidentiary gaps which may cause the ALJ to reach an unfair determination due to the lack of evidence, id. at 935, or if "the ALJ did not consider all of the evidence in the record in reaching his [or her] decision," Kelley, 761 F.2d at 1540.

**B. Medical Evidence**

The administrative transcript contains extensive medical evidence, including progress notes ranging from 1999 to 2006 for treatment Plaintiff received while incarcerated.[10] Tr. at

---

[10]     Plaintiff's periods of incarceration are unclear. At the August 2014 hearing, Plaintiff testified that since July 1989, he has been incarcerated on two occasions: from 2002 to 2006 and again in 2011 for two months. See Tr. at 391, 409. However, Plaintiff had previously reported to the SSA that he was incarcerated from 1994 to 2006. See Tr. at 207, 209 (SSA Disability Report indicating Plaintiff worked as a janitor in prison from 1994 to 2006); Tr. at 212 (SSA Work History Report indicating Plaintiff worked as a janitor in prison from 1994 to 2006). Based on the medical progress note from a department of corrections dated January 14, 1999, see Tr. at 304, it appears Plaintiff was in prison at least from 1999 to 2006.

271-79, 282-327. It also includes consultative examinations and Medical Source Statements of Ability to Do Work-Related Activities ("Medical Source Statement(s)") from four physicians: Dr. Timothy McCormick, see Tr. at 329-35, 747-59; Dr. Raul Zelaya, see Tr. at 350-58; Dr. Sabow, see Tr. at 1026-31; and Dr. Eftim Adhami, see Tr. at 1051-59.

Dr. McCormick conducted a consultative examination of Plaintiff on October 23, 2008. See Tr. at 329-35.[11] According to Dr. McCormick's examination notes, Plaintiff reported that he had been diagnosed with Parkinson's Disease "in 1994 or 1995[,] when he was in a correctional facility in Virginia." Tr. at 329.[12] Plaintiff reported his symptoms consist of "jerking" of his hands, arms, legs, and neck, which along with twitching, "are occurring all the time." Tr. at 329. He claimed that due to his condition, he "cannot eat with a fork as the food will come off of it . . . ." Tr. at 329. Plaintiff reported that his "last work activity was three months [prior to the examination] for a temporary service doing labor work," and "he stopped as there was no further work." Tr. at 330. Dr. McCormick indicated that "[t]here was no tremulousness noted about the legs, neck or in the left hand," Tr. at 330, and that there were "occasional[ ] . . . tremors noted on examination, but this was not a consistent feature," Tr. at 331. According to Dr. McCormick, Plaintiff "does not have any other clinical features of Parkinson's and his physical examination was otherwise normal." Tr. at 331.

Dr. Zelaya is an orthopedic doctor who examined Plaintiff on June 22, 2010. See Tr. at 350-52. Plaintiff again reported he had been diagnosed while in prison with Parkinson's

---

[11]     Dr. McCormick evaluated Plaintiff again on August 8, 2013—after Plaintiff's case had been remanded to the ALJ. See Tr. at 747-53. This examination is discussed in more detail below.

[12]     The administrative transcript does not contain medical records from this time period; but, as the ALJ noted, the 1999 through 2006 medical records from the criminal institutions where Plaintiff was incarcerated do not indicate that he was diagnosed with Parkinson's Disease or that he received treatment for Parkinson's Disease during that time. Tr. at 370-71 (ALJ's Decision); see Tr. at 271-79, 282-327 (medical records).

Disease. Tr. at 350. Dr. Zelaya indicated that Plaintiff was "capable of performing fine and dexterous movements with both hands, such as buttoning and unbuttoning clothing and picking up small objects," but that "[h]e had some difficulty in writing his name due to the persistent tremor associated with Parkinson's Disease." Tr. at 351. Dr. Zelaya diagnosed Plaintiff with Parkinson's Disease, evidently based on Plaintiff's statements at the examination. See Tr. at 352.

On June 22, 2010, Dr. Zelaya also completed a Medical Source Statement. See Tr. at 353-58. Dr. Zelaya opined that Plaintiff can continuously lift and carry up to ten pounds, frequently lift and carry eleven to twenty pounds, occasionally lift and carry twenty-one to fifty pounds, and cannot lift or carry more than fifty pounds. Tr. at 353. Dr. Zelaya also indicated Plaintiff can sit up to five hours in an eight-hour workday, stand for up to one hour in an eight-hour workday, and walk up to two hours in an eight-hour workday. Tr. at 354. Dr. Zelaya opined that with the right hand, Plaintiff can continuously reach, push and pull; he can frequently handle and feel; and he can occasionally finger. Tr. at 355. He indicated Plaintiff can continuously use his left hand for reaching, handling, fingering, feeling, pushing, and pulling. Tr. at 355. Dr. Zelaya opined Plaintiff can continuously kneel, crouch, and crawl; he can frequently balance and stoop; he can occasionally climb stairs and ramps; and he cannot climb ladders or scaffolds. Tr. at 356.

The ALJ gave Dr. Zelaya's opinion "little weight." Tr. at 372. According to the ALJ, Dr. Zelaya "apparently relied on [Plaintiff's] report for the Parkinson's Disease diagnosis," but "his examination noted that [Plaintiff's] major joints were normal." Tr. at 372. The ALJ indicated that "[e]ven with that diagnosis, [Dr. Zelaya's M]edical [S]ource [S]tatement did not preclude all work activity." Tr. at 372.

On August 8, 2013, Dr. McCormick examined Plaintiff again. See Tr. at 747-53. At the examination, Plaintiff reported that he "has not been formally diagnosed" with Parkinson's Disease, but said that "the [ALJ] sent [him] to [a] doctor who said [he] had Parkinson's." Tr. at 747.[13] Plaintiff reported he has tremors in both hands, but the tremor in his right hand is worse. Tr. at 747. He again reported he has difficulty eating with a fork. Tr. at 747. During the examination Plaintiff "was given several paperclips and asked to join them together," and "he was able to do it, but he had a lot of tremor with both hands when attempting to do that activity." Tr. at 749. Dr. McCormick indicated that "after walking about [sixty] feet away from the examination room, [Plaintiff] had a few times when he had a misstep and a slight stumble." Tr. at 748. He opined Plaintiff "appeared unsteady after walking that distance." Tr. at 748. Dr. McCormick indicated Plaintiff "does not have [the] shuffling-type gait of Parkinson's." Tr. at 749-50.

Dr. McCormick also completed a Medical Source Statement on August 8, 2013. See Tr. at 754-59. He opined that Plaintiff can occasionally lift and carry up to ten pounds, sit seven hours in an eight-hour workday, and stand or walk thirty minutes in an eight-hour workday. Tr. at 754-55. Dr. McCormick further opined that Plaintiff can occasionally use his left hand for reaching, handling, fingering, feeling, pushing, and pulling. Tr. at 756. He indicated that with the right hand, Plaintiff can occasionally reach but cannot handle, finger, feel, push, or pull with his right hand. Tr. at 756. He opined that due to Plaintiff's balance, Plaintiff cannot engage in postural activities and can never be exposed to unprotected heights, moving mechanical parts, or operation of a motor vehicle. Tr. at 757-58.

---

[13]     It appears Plaintiff is referring to the examination conducted by Dr. Zelaya in June 2010, see Tr. at 350-52, as he is the only doctor who diagnosed Plaintiff with Parkinson's Disease.

The ALJ gave Dr. McCormick's opinion "little weight" because, according to the ALJ, "it is inconsistent with [Dr. McCormick's] objective findings and the other evidence of record." Tr. at 372. Specifically, the ALJ indicated the following:

> [Dr. McCormick] noted that [Plaintiff] had never been formally diagnosed with Parkinson's. He further noted on examination, [Plaintiff] did not have [the] shuffling-type gait of Parkinson's. He indicated that [Plaintiff] had difficulty with his hands and difficulty with fine manipulations, but this was attributable to tremor. He had a mild degree of imbalance after a short walk[,] although he did not require the use of an assistive device.

Tr. at 372.

Dr. Sabow is a medical consultant with a background in neurology. See Tr. at 1033-34. At the SSA's request, he examined Plaintiff apparently on November 20, 2014, and completed a Medical Interrogatory ("Interrogatory"), see Tr. at 1036, 1023-25, and a Medical Source Statement, see Tr. at 1026-31, on the same date.[14] In the Interrogatory, Dr. Sabow opined that Plaintiff's impairment(s) meet(s) or equal(s) Listing 12.02. Tr. at 1024. In support of this conclusion, he wrote the following:

> I am reasonably certain that [Plaintiff] has an inherited familial neurological disease[,] probably a neuro[-]phakomatoses such as Tuberous Sclerosis. He must be evaluated in detail with this in mind. His mother's sudden death at [a] young age - [Plaintiff's] early development milestone[s,] prob[lems] in school . . . are suspicious of one of the neurocognitive disorders.

Tr. at 1024-25. In the Medical Source Statement, he opined that Plaintiff "has an undiagnosed chronic cognitive abnormality causing moderately severe psychomotor-neurologic involvement," and that Plaintiff "needs in[-]depth evaluation to [rule out] things

---

[14]    The administrative transcript does not contain an examination report from Dr. Sabow. The Interrogatory and the Medical Source Statement were completed November 20, 2014. See Tr. at 1023-25 (Interrogatory), 1026-31 (Medical Source Statement). It is likely that Dr. Sabow examined Plaintiff on November 20, 2014 before completing the Interrogatory and the Medical Source Statement.

such as Tuberous Sclerosis." Tr. at 1027. According to Dr. Sabow, Plaintiff "does not have Parkinson's Syndrome." Tr. at 1027 (some capitalization omitted).

As to Plaintiff's limitations, Dr. Sabow opined that Plaintiff can sit eight hours in an eight-hour workday, can stand and walk four hours in an eight-hour workday, can frequently lift and carry up to twenty pounds, and can occasionally lift and carry up to fifty pounds. Tr. at 1026-27. He opined that Plaintiff can occasionally use both his right and left hands for reaching, handling, fingering, feeling, pushing, and pulling. Tr. at 1028. He indicated that due to "poor coordination," Plaintiff cannot use his lower extremities for operation of foot controls. Tr. at 1028. He opined that Plaintiff can never climb ladders or scaffolds, stoop, kneel, crouch, or crawl; but that he can occasionally balance and climb stairs and ramps. Tr. at 1029. He stated Plaintiff cannot be exposed to unprotected heights and moving mechanical parts, but that he can occasionally operate a motor vehicle and have frequent exposure to humidity and wetness; dusts, odors, fumes, and pulmonary irritants; extreme temperatures; and vibrations. Tr. at 1030.

On March 2, 2015, responding to a request that he provide two responses that were not completed in the Interrogatory, Dr. Sabow indicated that there was insufficient evidence to allow him to form an opinion on the nature and severity of Plaintiff's impairments. Tr. at 1037, 1039. He provided the following explanation for that opinion:

> The history and examinations are not consistent with Parkinson's Syndrome. The history of a movement disorder described by [Plaintiff, such] as jerking and tremors beginning in childhood, the neuropsychological evaluation from his

> early schooling, the seborrheic skin noted by (8F)[15] and the history of [his] mother dy[ing] from a brain hemorrhage lead me to have him examined by a neurologist who I am confident would order a MRI at the least.

Tr. at 1040.

The ALJ discussed Dr. Sabow's assessment in detail and stated she "considered Dr. Sabow's assessment of [Plaintiff] and gave it weight to the extent [Plaintiff] was noted to be diagnosed with a hand tremor." Tr. at 373.

Based on Dr. Sabow's opinion, Plaintiff's counsel requested—by letter dated December 10, 2015—that the ALJ issue a fully favorable decision or "order the MRI and neurological examination as specifically recommended by Dr. Sabow . . . ." Tr. at 694. Subsequently, the ALJ ordered a neurological evaluation of Plaintiff by Dr. Adhami that was conducted on April 23, 2016. See Tr. at 1051-53.[16] Dr. Adhami also completed a Medical Source Statement on the same date. See Tr. at 1054-59. According to the evaluation report, Plaintiff's "[m]uscle strength [was] 5/5 in all muscles, including grip strength of both hands," and "there [were] no abnormal movements like spasticity, rigidity, [or] tremor . . . ." Tr. at 1052. Dr. Adhami indicated that Plaintiff "report[ed] a history of leg tremor or [u]ncoordination since [a] young age." Tr. at 1053. He opined that Plaintiff "may have had a type of intermittent dystonia that was temporary," but that it is "unlikely to be Parkinson's" even though it "was labeled as such." Tr. at 1053. In the Medical Source Statement, Dr. Adhami opined that Plaintiff can frequently lift and carry up to twenty pounds, can occasionally lift and

---

[15]     Exhibit 8F contains Dr. Zelaya's consultative examination report and Medical Source Statement. See Tr. at 350-58.

[16]     In a letter to the ALJ, dated May 24, 2016, Plaintiff's counsel again requested an MRI and argued that Dr. Adhami's report should be given "limited to no weight" because he is not a neurologist. See Tr. at 700-01.

carry up to fifty pounds, and can sit, stand, and walk four hours in an eight-hour workday. Tr. at 1054-55. Dr. Adhami indicated that Plaintiff does not have any restrictions in the use of his hands or feet. See Tr. at 1056. He opined that Plaintiff can occasionally climb stairs, ramps, ladders, and scaffolds, and can frequently balance, stoop, kneel, crouch, and crawl. Tr. at 1057. The ALJ gave Dr. Adhami's opinion "great weight." Tr. at 373.

## C.  Whether the ALJ Properly Considered Dr. Sabow's Opinion

Contrary to Plaintiff's assertion that the ALJ ignored Dr. Sabow's opinion, it is clear from the Decision that the ALJ considered and discussed his opinion, see Tr. at 372-73, but gave it only "weight to the extent [Plaintiff] was noted to be diagnosed with a hand tremor," Tr. at 373. Summarizing Dr. Sabow's first response to the Interrogatory, the ALJ noted that Dr. Sabow "indicated that [Plaintiff] possibly had a neurocognitive disorder based on a review of [Plaintiff's] school records." Tr. at 372. She also stated that Dr. Sabow opined Plaintiff needed to be examined by a neurologist, and she noted Dr. Sabow's observations that led to this conclusion. See Tr. at 373. Further, the ALJ discussed in detail Dr. Sabow's opined limitations. See Tr. at 373.

The ALJ was not required to give significant weight to Dr. Sabow's opinion, as Plaintiff seems to suggest when he argues that the ALJ erred by not finding Plaintiff disabled based solely on Dr. Sabow's opinion. See Pl.'s Mem. at 25. Dr. Sabow is not a treating physician and, as noted, "[a]n examining physician's opinion . . . is not entitled to deference," see McSwain, 814 F.2d at 619 (citing Gibson, 779 F.2d at 623), and "taken alone, do[es] not constitute substantial evidence," Broughton, 776 F.2d at 962 (citing Spencer, 765 F.2d at 1094. Although Dr. Sabow has a background in neurology, the ALJ was free to reject in part

-18-

his opinion after finding that "the evidence support[ed] a contrary conclusion." Oldham, 660 F.2d at 1084; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Winschel, 631 F.3d at 1179 (citing Sharfarz, 825 F.2d at 279); Moore, 405 F.3d at 1212. Thus, the undersigned finds that the ALJ properly considered Dr. Sabow's opinion.

## D. Whether the ALJ Developed a Full and Fair Record

Upon review, the undersigned finds the ALJ fulfilled her duty to develop a full and fair record.  The evidence in the record was sufficient for the ALJ to make a fair determination, and additional expert testimony was thus unnecessary. The ALJ was not obligated to obtain medical expert testimony, and Plaintiff cites no authority that would require the ALJ to obtain such testimony. Because there was sufficient evidence in the record to make a disability determination, the ALJ was justified in concluding that no expert testimony was necessary. See Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999) (holding that "the record, which included the opinions of several physicians . . . , was sufficient for a decision and additional expert testimony was unnecessary").

In any event, Plaintiff has failed to show that he suffered prejudice as a result of the ALJ's election not to subpoena a medical expert to testify. Indeed, Plaintiff has not raised any issue regarding his due process rights. See Pl.'s Mem. at 25-31. There are no evidentiary gaps in the administrative transcript, as the evidence in the record was sufficient for the ALJ to make a fair determination. See Brown, 44 F.3d at 934-35. This evidence notably includes the report from the neurological evaluation conducted by Dr. Adhami. See Tr. at 1051-53. Further, other than Dr. Sabow's opinion that Plaintiff meets or equals Listing 12.02, "no medical opinion . . . precludes [Plaintiff] from work at all levels of exertion." Tr. at 373. The

undersigned notes that despite Dr. Sabow's opinion regarding Listing 12.02, his opined limitations in the Medical Source Statement do not preclude Plaintiff from work at all levels of exertion. See Tr. at 1026-31. In fact, in terms of Plaintiff's ability to lift, carry, sit, stand, and walk, Plaintiff's RFC contains more limitations than Dr. Sabow's opinion. Compare Tr. at 368-69, with Tr. at 1026-27.[17] The undersigned also finds that the ALJ fully considered and discussed in detail the evidence in the record, including the medical records from the criminal institutions where Plaintiff was incarcerated and the medical examinations and Medical Source Statements discussed above. See Kelley, 761 F.2d at 1540; Tr. at 370-73 (ALJ's discussion of medical evidence). Thus, the undersigned finds no error in the ALJ's decision not to subpoena Dr. Sabow, or any medical expert, to testify.

### V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**RECOMMENDED**:

1.      That the Clerk of Court be directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

---

[17]      Under the Regulations, "[l]ight work involves lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

2.      That the Clerk be further directed to close the file.

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on February 2, 2018.

*James R. Klindt*

**JAMES R. KLINDT**
United States Magistrate Judge

bhc
Copies to:

Honorable Marcia Morales Howard
United States District Judge

Counsel of record